UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D.C.

FILED
RECEIVED OCT 14 2005
U.S. DISTRICT COURT
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT
2005 OCT 14 PM 8:31

CLIFFORD F. SMITH )
203 BATTERSEA LANE
FORT WASHINGTON, MD 20746

      Plaintiff

v.

ALPHONSO R. JACKSON
Secretary
U.S. Department of Housing and Urban Development
451 7th Street, NW
Washington, DC 20410

      Defendant.

CASE NUMBER   1:05CV02042

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Employment Discrimination

DATE STAMP: 10/14/2005

Jury Trial Demanded

## COMPLAINT

(Race/Color, Age Discrimination; Harassment, Retaliation Hostile Work Environment And Complaint For Declaratory Judgment, Permanent Injunctive Relief And Damages)

### INTRODUCTION

1.    Clifford F. Smith brings this civil action pursuant to the Civil Rights Act of 1964 as amended, 42 USC. Section 2000e, ("Title VII"); the Civil Rights Act of 1866, as amended 42 U.S.C. §1981 ("Section 1981"); and District of Columbia Common Law. Mr. Smith asserts that because of his race (African American), color (black), he was discriminated, harassed and retaliated against by the Defendant. Plaintiff also asserts that Defendant continuously discriminated, harassed and retaliated against him because of his race and color and age.

### JURISDICTION

2.    This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U S C Section 1331. This action is authorized and instituted pursuant to Section

1

706(f) of Title VII, 42 U.S.C. § 200e-5(f); and 42 U.S.C. § 1981 as amended. Mr. Smith timely files this complaint after exhausting his administrative remedies at the Department of Housing and Urban Development. (hereinafter "HUD").

## VENUE

3. Venue is proper in this judicial district because Plaintiff is employed by HUD in Washington DC, and all events that give rise to the claim in this Complaint took place in this jurisdiction.

## PARTIES

4. Mr. Smith is a United States citizen and a resident of the State of Maryland. At all times relevant to the complaint the plaintiff was employed by HUD.

5. Defendant Department of Housing and Urban Development is a United States Government Agency, with headquarters in Washington, DC. Alphonso Jackson is the Secretary of HUD and he is responsible for its personnel actions and practices.

## STATEMENT OF FACTS

6. Plaintiff has been employed with HUD beginning May 1984, as an accountant. Plaintiff was assigned to Procurement Management Division in July 1998. On April 25, 2002 Mr. Thomas Vincent, a white Supervisor with HUD began to harass Plaintiff and to subject him to discriminatory treatment by aggressively attacking his performance/duties. Plaintiff successfully performed his duties and was award an Outstanding Award for 10 years, beginning in 1989 to about 1998. Mr. Vincent deliberately shouted threats, offensive and embarrassing orders against Plaintiff including; "I'm gonna fix you, I'm gonna make you do what I want, am gonna make you pay, am gonna show you am the boss."

7. Mr. Vincent ordered Plaintiff to perform tasks on a contract that was another

office's function within 15 minutes. Mr. Vincent ordered Plaintiff to report to the office on the following day, April 26, 2002, Plaintiff's scheduled day to work, even though Plaintiff had already worked my 40 hours for the week. Mr. Vincent further threatened Plaintiff with suspension, disciplinary action and negative consequences if Plaintiff did not report to essentially work overtime on his day off without pay.

8. On April 30, 2002, Mr. Vincent retaliated against Plaintiff by revoking Plaintiff's Compressed Work Schedule (hereinafter "CWS"), even though the Union AFGE AFL-CIO (hereinafter "Union") submitted a Demand to Bargain memorandum on the same day. The order to revoke my CWS by rule was to be held in abeyance until the Union and management resolved the matter. Instead HUD allowed Mr. Vincent to charge Plaintiff with AWOL, and continue to verbally abuse, harass and discriminate against Plaintiff.

9. On May 1, 2002, Mr. Vincent called Plaintiff into his office at least nine times yelling and calling Plaintiff derogatory names. On May 2, 2002 HUD through its agent called Plaintiff into his office several times again that morning supposedly to discuss work and the status of a contract, only to issue more threats including remarks " I did not know what I was doing." Mr. Vincent threatened with disciplinary action, including AWOL, leave without pay and "fix you". When Plaintiff requested a Union representative to be present due to the frequency of threats, his request was denied.

10. Mr. Vincent ordered that Plaintiff should submit a Leave Slip every time Plaintiff needed to go to the rest room or go to the Union Office. Due to the contact harassment and threats because of his race and color, Plaintiff fell sick and had to report to the Health Unit.

11. At the Health Unit the attending nurse diagnosed Plaintiff with an unusually blood pressure which was rising to a dangerous level, and proceeded to call an ambulance to

convey Plaintiff to the emergency room. Nevertheless, while waiting his doctor was summoned, who then advised Plaintiff to go home and rest. On May 3, 2002 Plaintiff was attended by his doctor, who advised him to stay away from the hostile work environment created by HUD, because it was very dangerous for Plaintiff. Plaintiff was attended by his doctor on May 6, 2002, and was advised by his doctor to stay away from the hostile work environment. On May 9, 2002 due to his continuos sickness, Plaintiff was referred to Dr. Frank Michener a Situational Stress Doctor.

12. On May 14, 2002 Plaintiff returned to work and submitted two Disability Certificates from his Doctors to his supervisor stating that a stressful hostile environment could be dangerous and life threatening. The supervisor disregarded these notices from the Doctors and continued to harass Plaintiff with disparaging remarks about his "not knowing what he was doing" including threats of "inflicting suffering', putting Plaintiff on Absence without leave (AWOL), and Leave without pay (LWOP), requesting a leave slip if he I had to go to the rest room and the Union Office, and writing disparaging remarks, and false charges about Plaintiff when he followed his Doctors instructions.

13. The threats and harassment continue even though Plaintiff walked away from any confrontations with Mr. Vincent. On these occasions Mr. Vincent followed Plaintiff into his office sometimes five to eight or more times a day and continue the threats. Mr. Vincent will then follow his verbal threats and abuse with emails, just to make life On many occasions, Plaintiff had to go to the Health Unit only to be informed that his blood pressure was too high to be released back into the hostile work environment.

14. On May 21, 2002, Plaintiff submitted a request to the Employees Assistant office for "Reasonable Accommodations" to be reassigned with documentation from his Doctors,

4

stating his medical problems. This request was denied by his Supervisor stating that Plaintiff "wasn't going to get away that easy" and he was "going to make Plaintiff respond to him. The threats and negative email continued.

15. On May 22, 2002 Mr. Vincent walked into Plaintiff's office at 8:05 a.m. ranting and raving and threatening Plaintiff with disciplinary action shouting that Plaintiff should not be in the office. Mr. Vincent then told Plaintiff that he was going to place him on AWOL and that I will see to it that you are not paid." When Plaintiff advised Mr Vincent he has cancelled his vacation at about 5:20 p.m. he stormed into Plaintiff's office and in a hysterical voice demanded that Plaintiff report to work on his days off.

16. Mr. Vincent was standing at the door of Plaintiff's office, and refused to allow Plaintiff to leave his office by blocking the door. Even though it was time for Plaintiff to leave the office for the day, Mr. Vincent refused to allow him to leave by blocking the door. When he finally allowed Plaintiff to leave, he proceeded to follow Plaintiff to the water cooler, and in a low monotone voice continued to threaten Plaintiff with disciplinary action and AWOL. When Plaintiff attempted to walk into another colleague Teresita Tomita office, Mr. Vincent followed Plaintiff step by step and continued the threats and harassment yelling that 'Plaintiff was going to pay dearly' and that 'he was going to really suffer the consequences'. Plaintiff felt anxious, flushed, drained, pain in his chest, and shortness of breath.

17. The following day, the incident was related to James Smallwood Plaintiff's colleague by Kathy Tanner who witnessed the threats and harassment. Teresita Tomita and Elaine Van De Vorst heard the confrontation when Plaintiff was threatened and harassed by Mr. Vincent.

18. On May 31, 2002 the Mr. Vincent submitted a 'proposal to suspend' Plaintiff for

five days. On June 5, 2002, Vincent visited another threat on plaintiff. Vincent entered Plaintiff's office threatening that he is going to force Plaintiff to do what he wants. Vincent then left Plaintiff's office and returned with Brenda Lambert, who had a pad and pencil. On this occasion, Vincent completely blocked the doorway to Plaintiffs office, and when Plaintiff tried to leave he prevented him from leaving. Vincent dared Plaintiff to "push him out of the way" or 'try to squeeze by.'. He ordered Plaintiff to respond to him. Plaintiff called Security and he was referred to the Federal Protection Agency. Plaintiff and related the incident to the Union the following morning.-

19. On June 12, 2002, Vincent confronted Plaintiff with more threats to the point that Plaintiff had to call the Union Representative to come to his office. The Union representative was subjected to such irrational, undignified abuse by Vincent to the extent that the Representative advised Plaintiff to leave with her. Vincent was barking and raving insults at me and the representative and threatening Plaintiff's demise to the extent that the Union contacted Labor Relations, Employee Relations. On June 12, 2002, Plaintiff was immediately moved from the hostile environment to non-hostile office, and advised that there would be no further contact with the Thomas Vincent or the team leader, Brenda Lambert. Plaintiff was advised that the Director would be his new supervisor and his new team leader would be Bernard Morton. Plaintiff continued to feel sick because of the mistreatment by Vincent, that he visited the Health Unit and again his blood pressure was highly elevated to the point that he had to remain there for some time.

20. Even though Plaintiff was assigned to another office with a new supervisor, Thomas Vincent, continued to place him on AWOL and signed Plaintiff's time and attendance card.

21. During the period of his short tenure in the office, Plaintiff continued to experience sharp like needle pains in his chest, shortness of breath, blood pressure escalations, numbness in his right hand, outbreak of blisters, and a problem with his right foot.

22. On July 31, 2002 he was ordered back to the same hostile environment where he had been removed by Ted Ford. On August 1, 2002 Plaintiff's Doctor and his Psychiatrist disagreed with Ted Ford's decision, noting it would be detrimental to Plaintiff's medical and mental health. Plaintiff was unable to function in the same environment and went on disability until his medical condition improved and he was fully evaluated by his Cardiologist, Primary Physician, and Psychiatrist.

23. When Plaintiff reported the incidents to HUD, no action was taken. Due to Defendant's continuos race/color discrimination; harassment and retaliation, Plaintiff filed a complaint with the Agency.

## STATEMENT OF CLAIM

24. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

25. The plaintiff was subjected to intentional and willful discrimination because of his Race/Color; when he was continuously threatened, harassed and retaliated in 2002. The Defendant engaged in unlawful employment practices in violation of Title VII, and Section 1981.

26. The Plaintiff was subjected to intentional and willful discrimination because of Defendants threats, harassment and retaliatory acts.

27. The Plaintiff was subjected to intentional and willful discrimination because

Defendant forced him to work on his off days in a hostile environment.

28. Plaintiff because of Defendant's unlawful discrimination has suffered personal injury, economic losses, lost pay benefits, lost career benefits and opportunities, emotional distress, and personal and professional humiliation.

## FIRST CAUSE OF ACTION

### TITLE VII - DISCRIMINATION

29. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 28 above as though fully set forth herein.

30. Plaintiff is a member of a protected class, Black, African American.

31. Plaintiff is the only employee who suffered the discrimination because he was Black.

32. Defendants' promotion of a hostile work environment was an act of discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a).

33. Defendant's promotion of a hostile work environment was willful and malicious and was done with reckless indifference to Plaintiff's right to employment opportunities unfettered by racial discrimination guaranteed to him by Title VII, 42 U.S.C. § 2000e-2(a).

## SECOND CAUSE OF ACTION

### TITLE VII - RETALIATION

34. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 33 above as though fully set forth herein.

35. Defendant's continuous threats, harassment, and acts of ordering Plaintiff back to the hostile work environment in spite of his Doctors orders, after he was temporarily relocated was an act of retaliation for Plaintiff's complaints to the Union.

36. All of these actions by Defendant were willful and malicious and taken in direct and knowing violation of Title VII, 42 U.S.C. § 2000e-2(a)

### THIRD CAUSE OF ACTION
### SECTION 1981 - DISCRIMINATION

37. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 36 above as though fully set forth herein.

40. Plaintiff is a member of a protected class, Black, African American.

41. 31. Plaintiff is the only employee who suffered the discrimination because he was Black.

42. Defendants' promotion of a hostile work environment was an act of discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a).

43. Defendant's promotion of a hostile work environment was willful and malicious and was done with reckless indifference to Plaintiff's right to employment opportunities unfettered by racial discrimination guaranteed to him in violation of Section 1981.

44. Defendant's discrimination was willful and malicious and was done with reckless indifference to Plaintiffs's rights to employment opportunities unfettered by racial discrimination guaranteed to him by Section 1981.

### FOURTH CAUSE OF ACTION
### SECTION 1981 - RETALIATION

45. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 44 above as though fully set forth herein.

9

46. Defendant's continuous threats, harassment, and acts of ordering Plaintiff back to the hostile work environment in spite of his Doctors orders, after he was temporarily relocated was an act of retaliation for Plaintiff's complaints to the Union.

47. All of these actions by Defendant were willful and malicious and taken in direct and knowing violation of the rights guaranteed by Section 1981.

Prayer for Relief

Wherefore, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on the claims brought and provide him with the following relief:

1. enter a finding that Defendant discriminated against Plaintiff when he was not on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, as amended; and Section 1981.

2. enter a finding that Defendant discriminated against Plaintiff when Defendant's white supervisor threatened and harassed Plaintiff by threatening physical harm and calling him derogatory names.

3. enter a finding that Defendant discriminated against Plaintiff when he was not paid equal wages with his white colleagues in similar positions and forced to work longer hours than his colleagues in similar positions in violation of Title VII of the Civil Rights Act of 1964, as amended; and Section 1981.

4. enter a finding that Defendant's discrimination against Plaintiff was intentional and willful;

5. order Defendant to provide Plaintiff with full back pay (including awards, bonuses, pay raises and increases, 401(k) plan contributions and all other requisite

benefits) with interest;

6. award Plaintiff liquidated damages in amount equal to the total award of back pay;

7. order Defendant to correct Plaintiff's official personnel file and any and all Agency records to reflect the back pay award;

9. enjoin Defendant from discriminating or retaliating against Plaintiff and other Blacks and minorities in the future;

10. award Plaintiff the cost of bringing and maintaining this civil action and the administrative charge that preceded it, including reasonable attorneys' fees; and

11. award Plaintiff such other and further relief as the Court deems just and proper.

12. award Plaintiff punitive damages of One Million ($1,000,000) Dollars.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal rules of Civil Procedure, Plaintiff demands a trial by jury on all claims.

Respectfully submitted,

10/14/05

Clifford F. Smith
203 BATTERSEA LANE
FORT WASHINGTON, MD 20746