# Report of Investigation
# Exhibit 6

Case 1:05-cv-02042-CKK   Document 28-2   Filed 02/27/2008   Page 1 of 9

# AFFIDAVIT

| | | |
|---|---|---|
| Washington | } | Clifford R. Smith, Complainant |
| | } ss: | v. |
| District of Columbia | } | Department Housing and Urban Development |
| | } | |
| | } | Agency Docket Number FH-02-07 |

I, Don F. Schade, Supervisory Financial Specialist, Budget and Finance-FHA employed by the U.S. Department of Housing and Urban Development, Washington, D.C. hereby solemnly swear that the following statement is true and correct:

Q   Please state your name, title, grade of position, organizational unit, and work location, (city/state)

R   Don F. Schade, Supervisory Financial Specialist, GS-0501-15, Budget and Finance, 451 7th Street, S.W., Washington DC 20410

Q   How long have you held this position?

R   I have held this position since June 29, 2003.

Q   What is the name and title of your first and second line supervisor and how long have you worked for each of them?

R   Sandra Allison, Associate Deputy Assistant Secretary for Budget and Finance is my first line supervisor and Margaret Young; Deputy Assistant Secretary for Budget and Finance is my second line supervisor. I have worked for both of them since June 29, 2003.

Q   For the record, Please state your race, age, and date of birth.

R   My race is Hispanic-Mexican American, my gender is male and my date of birth is November 19, 1957.

Q   When did you hold the position of Director, Procurement Management Division?

# AFFIDAVIT

R    I was Director, Procurement Management Division, GS-1101-15, from June 18, 2000 until April 20, 2003. At this point, I ceased working for HUD and began working for another Federal Agency. I returned to HUD on June 29, 2003.

Q    Do you know Mr. Clifford Smith?

R    Yes, Mr. Smith is a Contract Oversight Specialist in the Procurement Management Division.

Q    Did you play a role in Mr. Smith being selected for the position of Contract Oversight Specialist?

R    No, Mr. Smith was already in his job when I became the Director.

Q    Are you aware of Mr. Smith's race, gender, and approximate age?

R    I believe Mr. Smith is an African American, male, approximately 60 years old.

Q    When and how did you become aware of Mr. Smith's race, gender, and approximate age?

R    Based on his appearance I assumed Mr. Smith is African American, his gender male, and that he was probably in his late fifties.

Q    Do you know Thomas Vincent?

R    Yes, Mr. Vincent was my Deputy when I held the position of Director, Procurement Management Division.

Q    For the record, please state Mr. Vincent's race, gender, and approximate age.

R    I believe Mr. Vincent's race is white, his gender is male, and I believe he is approximately 56 years old because he recently retired from the Department.

Q    Did Mr. Smith ever tell you or make you aware that he was being harassed by Mr. Vincent?

R    No



**AFFIDAVIT**

Q   Did you ever witness Mr. Vincent harassing Ms. Smith or behaving in a manner that would create or foster a hostile work environment for Mr. Smith?

R   I am not aware of Mr. Smith being harassed by Mr. Vincent and I am not aware of Mr. Vincent conducting himself in a manner that would create or foster harassment or a hostile work environment. I am aware that Mr. Smith was challenged by his job responsibilities. The most basic information relative to contracts appeared to register as unknown to Mr. Smith. For instance, when he was working the SASI contract I asked him to tell me what needed to be completed for the contracts office so that they could proceed with the award process and he could not answer me. He could not tell me what had to be done, what steps to take to complete the action, or when it would be completed. It was a very frustrating time for Mr. Vincent, Mr. Smith's team leader Brenda Lambert, and for me. Mr. Smith did not demonstrate the ability or concern for performing the functions necessary to the SASI contract. The SASI contract had some complexities but they were not outside of the competency level of his grade. As I recall, Mr. Smith was eventually relieved of the contract and it was assigned to Bella Wood, a lower grade Contract Oversight Specialist.

Q   Do you have knowledge of Mr. Vincent making racial slurs or disparaging remarks about anyone's race, gender, or age?

R   No, I do not.

Q   Do you have knowledge of any action on the part of Mr. Vincent that would create a hostile work environment for Mr. Smith?

R   No, I am aware that there have been verbal exchanges between Mr. Vincent and Mr. Smith where both parties addressed each other with an elevated voice.

**AFFIDAVIT**

Q   When did Mr. Smith ask to be reassigned and what did he state as the reason for his request to be reassigned?

R   It's my understanding that an actual request for reassignment occurred during a meeting between Ms. Barbara Alloway, from the Office of Management, Mr. Smith, and Union representatives. It was also my understanding that the request asked that Brenda Lambert no longer be assigned as Mr. Smith's Team Leader and that Mr. Vincent no longer be assigned as his supervisor. I am not certain of the exact date of this meeting nor was I present at the meeting.

Q   When and what action was taken to accommodate Mr. Smith's request to be reassigned?

R   Attempts were made by the Deputy Assistant Secretary for Operations, and the Office of Management, specifically Barbara Alloway, my immediate supervisor, to accommodate Mr. Smith's desire to be reassigned; however the attempts were unsuccessful and there appeared to be no interest in his services by the other managers contacted. Since assignment to another office was not feasible, Ms. Alloway negotiated with the Union to move him to the 9th floor on or about June 13, 2002. I was told by Ms. Alloway that Mr. Smith was to interact with me or Bernard Morton, the other PMD Team Leader on work related issues to minimize his contact with Mr. Vincent and Ms. Lambert.

Q   Articulate how the reassignment changed Mr. Smith's job title and duties or changed his line of supervision.

R   When Mr. Smith changed job locations, his title did not change and he had recently been relieved of some contract oversight responsibilities based on his request and the memo received from his doctor where the Dr. requested he be reassigned from

Page 4 of 7                                    Initials _____

## AFFIDAVIT

the SASI contract. His contact with Mr. Vincent and Ms. Lambert was minimized. I was formally assigned as his supervisor effective August 4, 2002.

Q   Did Mr. Vincent perform timekeeping functions relative to Mr. Smith when Mr. Smith was working on the 9th floor?

R   I do not believe Mr. Vincent performed supervisory timekeeping functions after Mr. Smith was formally reassigned to me as his supervisor, which was effective August 4th 2002, however I believe I began signing his time sheets prior to the formal reassignment, which as 2nd level supervisor was within my responsibilities. . Since I am no longer the Director of PMD I do not have access to timekeeping records to verify.

Q   What date did Mr. Smith return to his regular workspace?

R   I don't know.

Q   Why was Mr. Smith returned to his regular work location?

R   Mr. Smith was notified to return to his original workstation and was formally reassigned to be under my supervision via a letter signed by Ted Ford on July 29, 2002 with an effective date of August 4th 2002. Shortly after that letter was issued we received the Workman's Compensation claim. Mr. Smith never returned to the work during the remainder of my tenure as the Director.

Q   Was he placed under your supervision after his work assignment on the 9th floor ended, why?

R   He was formally placed under my supervision effective August 4, 2002. He was notified of this via a letter dated July 29, 2002. He was also notified to return to his original workspace on the 2nd floor. Due to the ambiguous medical documentation and wanting to error on the side of concern for Mr. Smith's health a determination

**AFFIDAVIT**

was made by Operations Management to place Mr. Smith under my supervision. Also Ms. Barbara Alloway, in discussions with Mr. Smith's Union representatives, believed she had an agreement that this reassignment satisfied Mr. Smith's concerns. Mr. Smith never returned to work during the remainder of my tenure as the Director of PMD.

Q   Have you harassed Mr. Smith?

R   No.

Q   Have you allowed anyone to harass Mr. Smith?

R   No.

Q   Did Mr. Smith file a Workmen's Compensation Claim wherein he alleged that he was disabled for work because of his working conditions, hostile work environment? If yes, when, and was his claim approved by the Department of Labor?

R   He filed a claim that was dated August 1, 2002. His claim was denied by DOL.

Q   Is there anyone you wish to be interviewed?

R   Gabrielle Scandone and Pauline Devore had responsibility for awarding the SASI contract and they are aware of Mr. Smith's failure and lack concern or effort to complete his job functions so that they could award the contract.

Q   Is there anything you wish to add to your statement?

R   No

I have read the above statement, consisting of ____7__ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I

Page 6 of 7                        Initials _____

# AFFIDAVIT

understand that the information I have given is not to be considered confidential and that it may be shown to interested parties. I declare under penalty of perjury that the foregoing is true and correct. Executed this __23_____ day of __October__ 2003

_____
Don F. Schade

# PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
# (OTHER THAN COMPLAINANT)
# FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to **DHUD** activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

## EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of **DHUD** employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____   _____
Signature of Interviewer                             Signature of Witness (person providing statement)

Date: 10-7-2003

Place: Washington D.C.

Rev. 10/9/98